UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JEFFREY TODD CARTE,

        Plaintiff,

v.                                CIVIL ACTION NO. 2:07-0515

THE UNITED STATES OF AMERICA and
THE UNITED STATES POSTAL SERVICE,

        Defendants.


MEMORANDUM OPINION AND ORDER


        Pending is the motion for summary judgment by defendant
United States Postal Service ("USPS"), filed November 5, 2009.


I.


        Carte is a part-time flexible clerk at the USPS's
Stonewall Office in Charleston, West Virginia.  (Compl. ¶ III;
Def.'s Memo. 2).  He worked as an employee for the USPS for over
two years prior to August 22, 2005.  (Id. ¶ V).  During this
time, Carte's supervisor, Larry Reed, filed complaints and formal
allegations of misconduct against Carte based on his alleged lack
of attendance at work.  (Id. at ¶ VI).  Carte contested each of
these complaints by filing grievances and prevailed with regard

to each grievance.  (Id.)  As a result, all of the complaints against him were dropped or dismissed.  (Id.).  Carte alleges that the allegations against him were unfounded and that Reed knew or should have known they were false.  (Id. at ¶ VII).

On August 7, 2005, Carte returned to work following a six-month absence resulting from a workplace injury.[1]  (Resp. 1-2).  Upon his return, Reed suspended Carte for seven days based on his history of poor attendance.  (Memo. 2, Reed Dep. 74:19-75:2).  During that same week, Carte was late to work several times.  (Memo. 2, Reed Dep. 75:19-22).  On August 9, 2005, Reed met with Carte and Carte's union representative to discuss the seven-day suspension.  (Resp. 2; Memo. 2, Reed Dep. 76:3-7).  At this meeting, Carte advised Reed that he intended to seek the counsel of the Employee Assistance Program ("EAP").  (Resp. 2; Memo. 2).  Jim Vance of the EAP referred Carte to a psychiatrist, Dr. Lawrence Kelly, to address the "stress and inappropriate treatment [Carte] felt he was subjected to."  (Resp. at 2).

On August 17, 2005, Carte completed the Department of Labor's ("DOL") claim form CA-2: Notice of Occupational Disease

---

[1] Carte provides two different dates for his return to work following his six-month leave of absence.  (Resp. 1-2).  He first states he returned to work on August 19, 2009, and later states he returned to work on or about August 7, 2005.  (Id.).  Based on the other dates provided by the parties, it appears that August 7, 2005, is the correct date.

and Claim for Compensation, claiming that he was under a stress level at work that was unbearable. (Memo. 3, Ex. A). The CA-2 form seeks compensation under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8102 et. seq. Under FECA, the United States compensates federal employees for disabilities sustained during the performance of their employment. 5 U.S.C. § 8102(a). In Carte's CA-2 form, he claimed to be:

> under constant stress, and I am continually harassed.
> I am singled out and harassed on an almost daily basis.
> I suffer from severe stress, severe migraines,
> depression, and high blood pressure. All of this is a
> result of the way I am treated and harassed at work.
> My stress level is unbearable.

(Id.).

On August 19, 2005, Carte met with Dr. Kelly and gave him the same description of his situation as he previously provided in his CA-2 form. (Resp. 2). On the same day, Dr. Kelly completed an Attending Physician's Report form provided by the Office of Workers Compensation Program ("OWCP") of the DOL on behalf of Carte. (Id.; Memo. 3). Dr. Kelly reported that Carte was suffering from recurrent major depressive disorder and was unable to return to work. (Memo. 3, Ex. B). He prescribed anti-depressant medication for Carte and stated his intention to re-evaluate Carte's condition in two weeks. (Id.).

3

On or before August 22, 2005, Carte asked his
girlfriend, Amy Taylor, who was also a USPS employee at that
time, to hand-deliver Carte's CA-2 form and Dr. Kelly's Attending
Physician's Report to station manager Glenn Haynes at the USPS's
Stonewall Office.  (Memo. 4-5; Resp. 2; Taylor Dep. 12:2-5, Sept.
2, 2009).  She delivered these documents to Haynes on the morning
of August 22, 2005.[2] (Resp. 2).  Haynes subsequently delivered
the documents to Reed.  (Resp. 3).  Carte contends that Reed read
the documents and then placed them on his desk, which was located
in the center of the open work floor area of the USPS's Stonewall
facility.  (Memo. 5; Resp. 3).  Carte presumes that Reed read the
documents when he received them based on Ms. Taylor's statement
that Reed and another employee, David Catlett, were "saying very
mean things" and "cracking jokes about stress leave and people
being crazy and having mental problems" soon after her delivery
of the documents that morning.  (Taylor Dep. 13:13-22).  However,
Reed states that he did not look at the documents when Haynes

---

[2] Whereas Carte states in his response brief that Ms. Taylor
delivered the documents on August 19, 2005, his complaint states
that he provided the records to the defendants on August 22,
2005.  (See Resp. 2; Compl. ¶ VIII).  Amy Taylor states that she
delivered the documents to Haynes around 7:00 a.m.  (Taylor Dep.
10:15-19, Sep. 2, 2009).  It appears likely the day of Taylor's
delivery of Carte's documents was August 22, 2005, inasmuch as
Carte's visit with Dr. Kelly occurred during the day on August
19, 2010.

**4**

delivered them and that he placed the documents on his desk for review later that day.  (Resp. 6; Reed Dep., 94:19-95:2, Aug. 21, 2009).

Later that morning, Ms. Taylor saw supervisor Veda Webster reading papers bearing Carte's name in the workroom near Reed's desk sometime between 7:00 a.m. and 10:00 a.m.  Once Ms. Webster finished reading these documents, she placed them on Reed's desk.  (Memo. 5; Resp. 3).  Prior to 10:00 a.m. that day, Ms. Taylor also heard other USPS employees, specifically Dave Catlett, Larry Reed, and Tom Accord, telling jokes about Carte having to see a physician for mental problems.  (Resp. 3).

After Ms. Taylor began her delivery route, Shannon Stover, a fellow delivery employee, called her and told her that he had heard that Carte had gone to the doctor because he was stressed out and was going to have to file for stress leave. (Id.).  Ms. Taylor states that Mr. Stover heard this information from Joey Fife who had heard it from Amy Bodkin, a clerk at a different station from where Ms. Taylor dropped off the paperwork.  (Id.).  Based on Ms. Taylor's observations, Carte alleges that Reed disseminated Carte's medical report or the information from the report to other non-supervisory USPS employees, thus causing the other USPS employees to make

5

disparaging remarks regarding Carte.  (Compl. ¶ VIII).  Carte
further alleges that these disparaging remarks exacerbated the
injuries that were documented in his CA-2 form.  (Id. at ¶ IX).

On September 2, 2005, Carte returned to Dr. Kelly for
his follow up appointment, and Dr. Kelly concluded that Carte's
symptoms had worsened following the dissemination of his
protected medical information in the workplace.  (Resp. 4).  Dr.
Kelly's notes stated that Carte "[f]ound out [that his]
supervisor left his [FECA] papers out for others to read and this
information spread through office."³  (Memo. 5; Kelly Dep., 33:1-
13, Oct 19, 2009).  Carte informed Dr. Kelly that he could never
return to that environment at the USPS as an employee again.
(Kelly Dep., 33:7-9).

On September 29, 2005, the USPS asked Dr. Kelly to
complete Form OWCP-5a, labeled Work Capacity Evaluation:
Psychiatric/Psychological Conditions, and return it to the USPS
for processing Carte's FECA claim.  (Memo. 5, Ex. D).  Dr. Kelly
completed and returned the form on October 6, 2005.  (Memo. 5,

---

³ In Dr. Kelly's medical records and his deposition
testimony, he references Carte's documents as "FMLA papers."
(Kelly Dep. 60:5-13).  When asked about his use of the descriptor
"FMLA," Dr. Kelly stated that it was "a generic term, I guess,
that I'm using," and then identified the documents as the CA-2
form filled out by Carte and the Attending Physician's Report
accompanying Carte's form.  (Id.).

Ex. E).  Dr. Kelly indicated on the form that Carte was unable to return to work due to his condition, but made no mention of the exacerbation of Carte's condition.  (Memo. 5-6).

On October 21, 2005, the DOL informed Carte that the materials received for his FECA claim were insufficient for the DOL to determine eligibility for FECA benefits for his allegedly work-related injury and asked him to submit further information to support his claim.  (Memo. 6, Ex. F).  The DOL never received the requested information from Carte.  (Memo. 6, Ex. J).  Also on October 21, 2005, the DOL sent a letter to the USPS directing the USPS to provide a full reply to Carte's allegations and advising that the absence of a reply could result in the OWCP accepting Carte's allegations as true.  (Memo. 6, Ex. G).

On behalf of the USPS, Reed responded to the DOL letter and contested Carte's allegations.  (Memo. 6, Ex. H).  In his letter, Reed stated that "Mr. Carte has not been harassed as he claims but has been dealt with for unsatisfactory performance." (Memo. 6, Ex. H).  Reed attached the "Request for Discipline And/Or Administrative Action" form which detailed Carte's history of unsatisfactory attendance in the workplace and the agency's attempts at corrective action.  (Id.).

By letter dated February 2, 2006, the DOL asked Dr. Kelly to complete and return a second Form OWCP-5a explaining Carte's current limitations.  (Memo. 6, Ex. I).  Dr. Kelly did not return a completed form to the DOL.  (Memo. at 6).  On February 22, 2006, the DOL entered a decision denying Carte's FECA claim for work-related injury based on a lack of evidence establishing that Carte had suffered an injury as defined by the FECA.  (Memo. 6, Ex. J).  In its decision, the DOL notes that it advised Carte of the deficiencies in his claim in the October 21, 2005, letter and requested additional information, but Carte failed to submit any further evidence.  (Id.).  Accordingly, Carte's FECA claim was denied.  (Id.).

Carte instituted this action against the USPS on August 20, 2007.  Carte specifically alleges that the defendants' actions violated the following: (1) the Privacy Act of 1974, (2) the Privacy Protection Act ("PPA") of 1980, (3) the Health Insurance and Portability Accountability Act ("HIPAA"), and (4) the West Virginia Human Rights Act ("WVHRA") and its "concomitant federal legislation."  Carte seeks (1) compensatory damages, (2) punitive damages, and (3) attorney's fees and expenses.

On November 5, 2009, USPS moved for summary judgment. USPS asserts that Carte's claims should be dismissed with

8

prejudice inasmuch as (1) Carte has not alleged sufficient facts to establish a PPA claim; (2) HIPAA does not authorize a private right of action; (3) Title VII, not the WVHRA, provides the exclusive remedy for federal employees claiming workplace discrimination; and (4) the FECA precludes Carte's Privacy Act of 1974 claims or, in the alternative, Carte has not provided sufficient evidence to establish a Privacy Act claim.

## II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  A party is entitled to summary judgment if the record as a whole could

not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

### III.  Privacy Protection Act

Section 2000aa(a) of the PPA makes it unlawful for a government officer or employee "to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce" in connection with the investigation or prosecution of a criminal offense.  42 U.S.C. § 2000aa(a).  The USPS contends that Carte's PPA claim fails inasmuch as he has not alleged a search or seizure of his materials.  (Memo. 7-8).  Carte does not respond to the USPS'

10

contention.  Additionally, he has not alleged an unlawful search or seizure of his work product materials in either his complaint or his response brief.  Absent an unlawful search and seizure, there can be no violation of the PPA.

Accordingly, the USPS is entitled to judgment as a matter of law respecting Carte's PPA claim.

### IV.  The Privacy Act

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."[4] 5 U.S.C. § 552a(b).  Carte alleges that he provided his medical information and records to Reed when filing "a claim with the Office of Workers' Compensation Program (OWCP) complaining of severe mental/emotional injury, all as a result or substantially proximately caused by the behavior of the individual supervisor [Reed] and/or other employees."  (Compl. ¶ VIII).  Carte further

---

[4] There are a number of statutory exceptions to this rule in section 552a(b)(1)-(12).  Neither party suggests that Carte's claim implicates one of the statutory exceptions.  Having reviewed the exceptions, the court likewise concludes they are inapplicable.

11

contends that Reed "in turn intentionally, recklessly and negligently disseminated said information and/or records to others directly and proximately causing harm to [Carte]."  (Id.).

The USPS asserts that Carte's Privacy Act claim is barred by FECA, inasmuch as FECA provides the exclusive remedy for federal employees' workplace injuries.  (Memo. 11). Alternatively, the USPS contends that Carte cannot establish a Privacy Act claim.

In order to establish a claim under the Privacy Act, Carte must demonstrate the following four elements: (1) the information is a record within a system of records, (2) the agency disclosed the information, (3) the disclosure adversely affected him, and (4) the disclosure was willful or intentional. Wilkerson v. Shinseki, 606 F.3d 1256, 1268 (10th Cir. 2010). See Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).  With regard to the third element, Carte contends that the disclosure of the OWCP forms provided to Reed caused him permanent mental injury resulting in his inability to return to work.  Otherwise, in his response brief, Carte fails to address the USPS's argument regarding his Privacy Act claim and the applicability of FECA. He simply states that the facts show that Reed's allegedly willful dissemination of his protected information violated the

12

Privacy Act and that his damages exceed $1,000 dollars.  (Resp. 6-7).

Through FECA, the United States compensates federal employees for disabilities sustained during the performance of their employment.  5 U.S.C. § 8102(a).  Section 8116(c) of FECA further provides as follows:

> The liability of the United States or an instrument-
> ality thereof under [FECA] with respect to the injury
> or death of an employee is exclusive and instead of all
> other liability of the United States or the
> instrumentality to the employee . . . because of the
> injury or death in a direct judicial proceeding, in a
> civil action, or in admiralty, or by an administrative
> or judicial proceeding under a workmen's compensation
> statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c).  "Benefits provided under FECA include benefits for total or partial disability to compensate for lost wages."  5 U.S.C. §§ 8105-06.

Through section 8116(c), "[f]ederal employees' injuries that are compensable under FECA cannot be compensated under other federal remedial statutes . . . ."  Wallace v. United States, 669 F.2d 947, 951 (4th Cir. 1982);  see Borneman v. U.S., 213 F.3d 819, 829 n. 3 (4th Cir. 2000);  Ezekiel v. Michel, 66 F.3d 894, 898 (7th Cir. 1995);  Sowell v. American Cyanamid Co., 888 F.2d 802, 805 (11th Cir. 1989).  The justification for this rule is similar to the employer immunity provisions found in worker

13

compensation schemes adopted by many, if not all, of the states:

> The . . . [FECA] is a comprehensive workers'
> compensation law for federal employees; . . . [it] is
> designed to provide quick and uniform coverage for
> federal civilian employees who are injured while in the
> performance of their duties.
>
> In enacting . . . FECA, Congress adopted the
> principal compromise -- the 'quid pro quo' -- commonly
> found in workers' compensation legislation: employees
> are guaranteed the right to receive immediate, fixed
> benefits, regardless of fault and without need for
> litigation, but in return they lose the right to sue
> the Government.

1 West's Fed. Admin. Prac. § 1001 (4th ed. 2010); <u>Lockheed
Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983).

In <u>Wallace</u>, our court of appeals addressed how a court
should analyze the matter of FECA exclusivity in the context of a
statutory claim pled as a result of events giving rise to injury
in a federal employee's workplace:

> The Act vests with the Secretary of Labor
> exclusive authority to administer FECA and to decide
> all questions arising under FECA, including eligibility
> for benefits.
>
>     . . . .
>
> In light of the authority Congress has given to
> the Secretary of Labor, most federal circuit courts
> have followed the rule that a federal employee cannot
> file an action under the Federal Tort Claims Act if
> there is a "substantial question" whether FECA applies,
> <u>Somma v. United States</u>, 283 F.2d 149, 151 (3d Cir.
> 1960), or unless his injuries are "clearly not
> compensable" under FECA. <u>Daniels-Lumley v. United
> States</u>, 306 F.2d 769, 771 (D.C. Cir. 1962). For all

>practical purposes, these formulations express the same
>standard. <u>Joyce v. United States</u>, 474 F.2d 215 (3d Cir.
>1973). We hold this to be the appropriate standard to
>apply to the question raised in this case -- whether
>the Wallaces' action filed under the Swine Flu Act is
>precluded totally by coverage under FECA. The first
>issue we address, therefore, is whether there is a
>substantial question that Wallace's injuries were
>sustained while in the performance of his duty as a
>federal employee.

<u>Wallace</u>, 669 F.2d at 951-52; <u>Mathirampuzha v. Potter</u>, 548 F.3d

70, 81 (2nd Cir. 2008) (citing <u>Wallace</u> and stating "We agree with

the majority of circuits to have addressed this question that

where there is a substantial question of FECA coverage -- indeed,

unless it is certain that the FECA does not cover the type of

claim at issue -- the district court may not entertain . . . [an]

FTCA claim.").

The court is thus required to assess whether there is a

substantial question that Carte's injuries were sustained while

in the performance of his duty as a federal employee.  Carte's

emotional injuries are rooted in the history surrounding his

interactions with Reed.  The discipline imposed by Reed, the

resulting grievance process, the 2005 suspension, and Carte's

resort to the EAP following the meeting between him, Reed, and

the union representative all occurred within the course of his

duties as a federal employee.  Carte asserts as much in his CA-2

form, noting that his job placed him under "constant stress" due

15

to being "harassed."  That harassment reached its zenith when Carte had Ms. Taylor deliver his FECA-related forms to Reed, who then apparently disseminated them to individuals in the workplace.

Carte might have been compensated under FECA for the injuries suffered as a result of these workplace events.  He appears, however, to have not diligently pursued his FECA claim. As noted, on October 21, 2005, the DOL informed Carte that the materials received for his FECA claim were insufficient to determine FECA eligibility.  He was thus asked to submit further information to support his claim.  This request for further information alone suggests that the DOL viewed the claim as potentially compensable.

Carte never replied.  On February 2, 2006, the DOL asked Dr. Kelly to complete and return a second Form OWCP-5a explaining Carte's current limitations.  Dr. Kelly also failed to respond.  These events led the DOL, on February 22, 2006, to enter its decision denying Carte's FECA claim for work-related injury based on a lack of evidence establishing that Carte had suffered an injury as defined by the FECA.  The basis for the decision is as follows:

> You filed a claim for a stress related condition. You
> claimed that you were constantly harassed and singled

16

out on a daily basis. The evidence submitted is
insufficient to establish that the event(s) occurred as
alleged because you have not identified a specific
event or incident which supports that you were harassed
and singled out at work. You have also not provided any
evidence to support that this was going on.
Furthermore, there is no medical evidence that provides
a diagnosis which could be connected to the claimed
event. You did submit a medical form CA-20 which stated
that you were suffering from major depressive disorder
which was being aggravated by stress at work. This was
not sufficient to support your claim because there was
no evidence to support your claims of harassment.

You were advised of the deficiencies in your claim in a
letter dated 10/21/2005, and provided the opportunity
to provide the necessary evidence.  We did not receive
any further evidence to support your claim.  We did
however receive information from your employer.

<u>Based on these findings</u>, the claim is denied because
the requirements have not been met for establishing
that you sustained an injury as defined by the FECA.

(Not. of Decis. at 1 (emphasis added)).

        The DOL decision is susceptible of two interpretations.

First, one might view it as a final determination on the merits

that the lack of specific evidence and medical support warranted,

from a substantive perspective, the conclusion that the United

States had no FECA liability to Carte.  Second, the DOL decision

could be construed as including an element of procedural default,

namely, that Carte's failure to produce evidence specifically

requested by DOL warranted the summary denial of the claim.  In

the first instance, Carte's Privacy Act claim is barred as having

been addressed within the broad terms of the DOL decision.

In the second instance, the DOL, at most, left an open, and substantial, question concerning whether Carte's injuries, if any, were sustained while in the performance of his duties.  The DOL was poised to resolve that question and requested, on at least two occasions, further information from Carte and his physician supporting the claim.  When Carte defaulted in submitting those materials, the claim was denied.

In sum, whether viewed as being precluded by a merits-based DOL decision or a decision of lesser quantum leaving open the substantial question of whether Carte's injuries, if any, were sustained while performing his duties, section 8116(c) bars a Privacy Act claim from being pursued in this action.

Accordingly, the USPS is entitled to judgment as a matter of law as to Carte's Privacy Act claim, which will be dismissed without prejudice to permit him to pursue any remaining administrative remedy that he may have under FECA related to the events that gave rise to this civil action.[5]

---

[5]The court recognizes that, under the doctrine of primary jurisdiction, the best approach is often to stay the case awaiting a final determination by the DOL concerning FECA eligibility.  See, e.g., Mathirampuzha, 548 F.3d at 84 ("In some cases involving the primary jurisdiction doctrine, the district court has discretion to dismiss the case without prejudice while the relevant issue is referred to and considered by the
(continued...)

V.   Health Insurance Portability and Accountability Act


        Under HIPAA, a "person who knowingly . . . discloses
individually identifiable health information to another person
shall be punished" by fine or imprisonment or both.  42 U.S.C. §
1320d-6(a)(3).  HIPAA authorizes the Secretary of Health and
Human Services to impose penalties on any person who violates
HIPAA's provisions.  Id. § 1320d-5(a)(1)(A), (B), and (C).
Additionally, state attorneys general may bring civil actions as
parens patriae for its residents in order to enjoin further
violations or to obtain damages on behalf of its residents.  Id.
§ 1320d-5(d)(1).

         The USPS seeks summary judgment as to Carte's HIPAA
claim inasmuch as HIPAA "does not explicitly or implicitly create
a private right of action for violations of the statute as
alleged by Carte."  (Memo. 8).  Carte fails to address the
defendant's argument in his response brief beyond alleging that
the defendants recklessly, wantonly, and intentionally

---

    [5](...continued)
administrative agency.  But dismissal without prejudice is
permitted only 'if the parties would not be unfairly
disadvantaged.'")  (citation omitted).  Inasmuch as Carte has
availed himself of his FECA remedies initially, the court
discerns no unfair advantage results from dismissal of the claim
without prejudice.

disseminated Carte's private medical information to his detriment.  (Resp. 6).  He does not offer any legal basis for finding a private right of action under HIPAA or its provisions.

While our court of appeals has yet to consider whether HIPAA provides a private right of action, several other United States courts of appeal have concluded that HIPAA does not provide an express or implied private right of action.  <u>Wilkerson v. Shinseki</u>, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); <u>Miller v. Nichols</u>, 586 F.3d 53, 59-60 (1st Cir. 2009); <u>Webb v. Smart Document Solutions, LLC</u>, 499 F.3d 1078, 1082 (9th Cir. 2007); <u>Acara v. Banks</u>, 470 F.3d 569 (5th Cir. 2006)(citing numerous federal district court cases holding that there is no private right of action under HIPAA).  Carte has offered no justification for departing from these decisions.  The court concludes that HIPPA does not provide an express or implied right of action to individuals.

Accordingly, the USPS has demonstrated that it is entitled to judgment as a matter of law as to Carte's HIPAA claim.

VI.  West Virginia Human Rights Act


The WVHRA provides that it is "the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment."  W. Va. Code § 5-11-2.  Under the WVHRA, equal opportunity in employment is "a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability." Id.  Carte alleges that the defendants' "aberrant or violative behavior" motivated by retaliation against Carte has "created such a hostile environment that [he] has been constructively discharged in violation of the [WVHRA] and concomitant federal legislation."  (Compl. ¶ 8).

The USPS seeks summary judgment as to Carte's WVHRA claim inasmuch as he has not provided factual allegations sufficient to state a claim upon which relief may be granted. Additionally, defendant asserts that Carte cannot file a discrimination claim under the WVHRA inasmuch as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, provides the exclusive remedy for federal government employees who suffer discrimination in their employment.  (Memo. 9-10).


21

Carte's WVHRA claim that the defendants discriminated against him is, presumably, because of an alleged disability. While Carte never specifies that this is the basis for his WVHRA claim, the only indication that Carte belongs to a protected class under the WVHRA is his allegation that his fellow USPS employees "knowing of the mental health deficits suffered by [Carte]" engaged in "taunting and disparaging behavior toward [him], all of which was calculated to harm [him] and to eventually drive him from employment with the [USPS]." (Compl. ¶ VII). Carte contends that this behavior was "motivated by a retaliatory animus and other illegal or personal gratification to see [Carte] suffer harm." (Id.)

Assuming arguendo that Carte alleges disability discrimination against the defendants under WVHRA, his WVHRA claim is barred by the Rehabilitation Act of 1973. 29 U.S.C. § 701 et seq. While the USPS suggests that Title VII would preclude Carte from bringing his WVHRA claim, Carte has not alleged that he is a member of a protected class under Title VII inasmuch as Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16.

22

The Rehabilitation Act constitutes the exclusive remedy for a federal employee alleging disability-based discrimination against the federal government and the USPS.  29 U.S.C. § 794; see Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007); Spence v. Straw, 54 F.3d 196, 197 (3d Cir. 1995).  Inasmuch as it appears that Carte has asserted disability discrimination against the defendants under the WVHRA rather than through the Rehabilitation Act, his claim is precluded.

Accordingly, the USPS has demonstrated that it is entitled to judgment as a matter of law as to Carte's WVHRA claim.

Regarding Carte's opaque reference to violations of "concomitant federal legislation," he neither supplies the factual allegations relating thereto nor does he identify the federal laws he relies upon.  It is the plaintiff's obligation to provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563).  Inasmuch as Carte has failed to allege the specific federal legislation upon which he relies, much less factual averments that would form the basis for a plausible claim thereunder, the USPS is entitled to judgment as a matter of law concerning any

23

intended claim for violation of "concomitant federal legis-
lation."

### VII. Common Law Tort Claims

A single sentence found within the USPS's memorandum
in support speculates, in summary fashion, that Carte has alleged
the torts of intentional infliction of emotional distress,
intentional interference with employment, and harassment in
addition to the claims specified by Carte in his complaint.
(USPS Memo. 1).  The USPS further contends that these tort claims
are governed by the Federal Tort Claims Act (FTCA) and, thus,
should be dismissed inasmuch as Carte failed to exhaust his
administrative remedies as required by the FTCA.

While the factual scenario set forth generally by Carte
in his complaint could conceivably support the three claims that
the USPS has generously inferred, Carte has neither alleged them
in his complaint nor mentioned them in his briefing.  Carte's
complaint is an enigma of sorts.  It is not divided into
individualized counts that specify the different claims for which
he seeks relief.  Rather, his claims are embedded within
paragraph IV of the pleading, which includes jurisdictional
allegations as well.

Paragraph IV specifically alleges violations of the Privacy Act, the PPA, and HIPAA.  (Id.).  It then states, "[a]dditionally, Carte verily believes that the individual defendant's conduct and vicariously the [USPS] have violated or had reason to believe violations of the 'West Virginia Human Rights Act' occurred, all of which violations have directly and cumulatively injured [Carte]."  (Compl. ¶ IV).  Later in the complaint, Carte again references his claims under the Privacy Act and the West Virginia Human Rights Act as well as its "concomitant federal legislation," but there is no further mention of the PPA or HIPAA.  The complaint, in its entirety, is best understood as identifying all of Carte's claims in paragraph IV.  That paragraph does not include any common law tort claims.

Carte's response brief serves as further evidence that he has not alleged tort claims.  Following the USPS's speculation that Carte had alleged tort claims against the defendants and its argument that these tort claims are barred by the exhaustion requirement of the FTCA, Carte makes no response.  He does not attempt to rebut the USPS's argument or offer any evidence that he complied with the FTCA exhaustion requirement.  In Carte's statement of the case, he summarizes his case as follows:

> Simply stated, Carte primarily complains that on August
> 22, 2005 his direct supervisor, Larry Reed recklessly,
> wantonly, and intentionally published or disseminated
> sensitive and personal medical information . . . .  The
> publishing of this medical/psychological information is
> in violation of the provision and spirit of the
> [Privacy Act], the [PPA], and the [HIPAA].

(Resp. 1).  Carte limits his discussion in the response brief to
these three claims alone.  Nowhere in the response brief does
Carte suggest the existence of common law tort claims pled
against the defendants.

While it is certainly understandable that the USPS
would seek to address any and all possible claims against it
within its motion for summary judgment, intuitive perception is
another matter entirely.  The court is not of the opinion that
Carte has alleged any common law tort claims against the
defendants.  It is the plaintiff's burden to state the grounds
upon which he seeks relief and the court declines to presume
claims that are not apparent from Carte's complaint.

Accordingly, the court need not address the USPS's
argument with regard to the FTCA.

## VIII.

Based on the foregoing, it is ORDERED that the USPS's motion for summary judgment as to Carte's claims under the Privacy Protection Act, the Privacy Act, the Health Insurance Portability and Accountability Act, and the West Virginia Human Rights Act, which are the only claims he pleads, be, and it hereby is, granted.  It is further ORDERED that each of these claims be, and they hereby are, dismissed with prejudice, with the exception that Carte's Privacy Act claim be dismissed without prejudice so as to permit him to pursue any remaining administrative remedy that he may have under FECA related to the events that gave rise to this civil action.

There being no relief sought against the United States of America beyond that sought against the United States Postal Service, it is ORDERED that the United States of America, the United States Postal Service, and thus this action in its entirety, be, and each hereby is, dismissed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  August 18, 2010

John T. Copenhaver, Jr.
United States District Judge

27